**FILED**
**November 5, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0486 – *Constellium Rolled Products Ravenswood, LLC v. Cooper et al. and Workforce West Virginia Board of Review*

WOOTON, J., dissenting:

The central issue in this appeal is whether the 2012 United Steelworkers Union strike at Constellium's Ravenswood aluminum manufacturing plant resulted in a work stoppage under West Virginia Code § 21A-6-3(4) (2012) such that the striking employees could be denied unemployment compensation benefits. With full knowledge of the 51% reduction in aluminum plate production and the 38% reduction in aluminum coil production Constellium suffered during the strike, a Labor Dispute Tribunal clearly found that there was no work stoppage under that statute. The Board of Review for Workforce West Virginia and the Circuit Court of Kanawha County both affirmed, agreeing that the facts presented failed to establish a "substantial curtailment" of Constellium's normal business operations such that there had been a work stoppage. The majority disagrees and now reverses the three lower tribunals' factual determinations that there was no substantial curtailment of Constellium's normal business operations. In so doing the majority disregards the substantial deference we afford the findings of fact made by the lower tribunals, and essentially reinterprets this Court's longstanding precedent addressing West Virginia Code § 21A-6-3(4) for what is, in essence, that precedent's final application.[1] Had the majority adhered to our standard of review and applied our precedent

---

[1] The Legislature amended West Virginia Code § 21A-6-3(4) in 2017 and removed the work stoppage provision. Now, under that code provision, any employee who is

1

as written, it would have been compelled to affirm the lower tribunals' determination that there was no work stoppage in this matter. Accordingly, I respectfully dissent.

The majority appropriately sets forth our "well-settled" standard of review in matters of this type:

> The findings of fact of the Board of Review of the West Virginia Department of Employment Security [now Workforce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of review by the court is *de novo*.
>
> Syl. pt. 3, in part, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994)

(emphasis added). However, the majority fails to explain that we have also held that a finding is clearly wrong

> when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.*

Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (emphasis added); *accord Donahue v. Cline*, 190 W. Va. 98, 102, 437 S.E.2d 262, 266 (1993) ("[A] reviewing court must evaluate the record of the agency's proceedings to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation

---

unemployed as the result of a labor dispute is essentially barred from receiving unemployment benefits. As such, all of our precedent interpreting the prior versions of that statute which included the work stoppage provision are superseded by statute.

2

is to be conducted pursuant to the administrative body's findings of fact regardless of whether the court would have reached a different conclusion on the same set of facts.") (citation omitted).

It is clear from the majority's opinion that it has disregarded this standard of review. Clearly the majority has overturned a factual finding of three lower tribunals simply because it would have decided the case differently. Constellium challenged a number of the lower tribunals' findings of fact on appeal, and the majority readily finds "nothing clearly wrong" with all but one of them. The majority's sole issue lies in the finding that there was no substantial curtailment of Constellium's business operations during the strike period. In reversing that finding, the majority opinion states:

> The Tribunal and Board's factual findings are due substantial deference, and "the disqualification provisions of the unemployment statutes must be narrowly construed." We do not defer to those tribunals, however, when we conclude that a factual finding is clearly wrong. Considering that the 2012 labor dispute reduced production at the plant by [51% for plate production and 38% for coil production] and affected 80 percent of Constellium's employees, the Tribunal's and Board's finding that Constellium's normal operations were *not* substantially curtailed due to the labor dispute is clearly wrong.

(Footnote and citation omitted).

It cannot be overstated that the majority affirms *all* of the other factual findings made by the lower tribunals. Yet, the finding the majority has reversed is *directly predicated* on the factual findings it affirms. Specifically, the majority affirms the lower

3

tribunals' use of a larger "lookback" period to ascertain Constellium's normal production output, a finding the majority notes it is "reluctant to second guess" because the lower tribunals were in a better position to assess testimony that the larger timeframe provided a more reliable picture of the company's cyclical business. The majority also affirms the lower tribunals' decision to include eleven non-strike days in the calculation of Constellium's production output during the strike months because excluding those dates would require one to "extrapolate, assume, estimate and guess the amount, difference, and significance of the strike and non-strike business activity in the August/September 2012 period." These findings shaped the methodology the lower tribunals used in calculating Constellium's pre-strike normal business output and the drop in production during the strike—the very calculations upon which the lower tribunals relied in assessing whether there was "substantial curtailment."

Even assuming, arguendo, the lower tribunals were mistaken in determining that there was no substantial curtailment of business operations, we are not in a position to reverse that factual determination. Our standard of review explicitly prohibits us from doing so because that determination is "plausible in light of the record viewed in its entirety." *In re Tiffany Marie S.*, 196 W. Va. at 226, 470 S.E.2d at 179, syl. pt. 1, in part. It was not unreasonable for the lower tribunals to examine the facts before them, see that Constellium's production output dropped, and still determine that said drop was not "substantial." As a reminder, the decrease in production amounted to only 51% of the normal output for plate aluminum and 38% for coil aluminum. Certainly, there was some

4

curtailment here, but whether that curtailment was "substantial" was within the sound discretion of the lower tribunals, and it is inappropriate for this Court to now disturb their factual finding in that regard.

My concerns do not end there. In justifying its decision to overturn the lower tribunals' finding on substantial curtailment, the majority has chosen to revisit our precedent interpreting West Virginia Code § 21A-6-3(4). At no point—until this decision—has this court ever set a threshold for what constitutes "substantial curtailment".

In addressing *Cumberland and Allegheny Gas Co. v. Hatcher*, 147 W. Va. 630, 130 S.E.2d 115 (1963), the majority states that

> [i]n that case, we surveyed decisions from [other states] before determining that no work stoppage had occurred; likewise, it is appropriate in this case to look to other states for guidance. And when we do that, we see that no court has established a hard-and-fast rule that a certain percent reduction in the employer's normal operations amounts to a *substantial* curtailment.

(Emphasis in original). I would agree with the majority that no state has established a bright-line rule for determining what amount of curtailment is necessarily substantial. However, the majority goes on to say:

> We will not make that rule, either, given the fact-intensive nature of the "substantial curtailment" inquiry. But in reviewing the facts of the cases before them, we cannot help but notice that other courts have recognized that a 20- to 30-percent reduction in production would seem to be the "critical breaking point . . . sufficient to establish a stoppage."

(Footnote omitted).

5

In essence the majority, after stating that it will not make a rule, proceeds to make a rule that anything in excess of roughly 20- to 30-percent of curtailment constitutes "substantial" curtailment. At no point in the last fifty-eight years—since the publication of *Hatcher*—has this Court even hinted that there is a so-called "critical breaking point . . . sufficient to establish a stoppage." To do so today flies in the face of our precedent and improperly usurps the authority of the lower tribunals to determine when the facts of a case illustrate substantial curtailment constituting a work stoppage.

While the majority may question our 1963 decision in *Hatcher*, the fact remains that the statute which formed the basis of that opinion—West Virginia Code § 21A-6-3(4)—remained virtually unchanged from 1931 to 2017, when the Legislature amended the law to remove the work stoppage provision. For this Court to essentially reverse our 1963 decision in *Hatcher* and "reinterpret" the requirements of that statute in a manner consistent with the 2017 statute is to give ex post facto application to the 2017 statute—a statute enacted well after the events giving rise to this litigation.

Unfortunately, the majority's holding invites speculation that this decision may have been based on achieving a desired result, rather than on the analysis of applicable statutes and pertinent decisions of this Court and courts of our sister states.

Because I believe the majority has overstepped its bounds by evading the requirements of our standard of review, and—on what is very likely to be its final

6

application—by reinterpreting this statute in contravention of our established precedent, I respectfully dissent.